**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Y. Lockwood, | No. CV-17-08210-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Teresa Y. Lockwood ("Lockwood") seeks review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security ("Commissioner"), which denied her application for disability and disability insurance benefits. As explained below, the Court affirms.

## I.  LEGAL STANDARD

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court

should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which addresses whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is

1 disabled.

## II. BACKGROUND

Lockwood is a high school graduate who previously worked as an auto service station manager in Colorado for 23 years. (A.R. 58.) Lockwood left that job on June 19, 2014, when her doctor informed her that she could "not perform the duties of [her] job without assistan[ce]." (*Id.*) Lockwood has since received long-term disability benefits. (A.R. 62.) Those benefits will terminate in 2024. (*Id.*)

On July 2, 2014, Lockwood filed a Title II application for a period of disability and disability insurance benefits, alleging that her disability began on June 19, 2014. (A.R. 197–98.)

On September 13, 2016, the hearing occurred before the ALJ. (A.R. 52-88.) Lockwood and a vocational expert ("VE") each testified. (A.R. 52.)

On December 1, 2016, the ALJ issued a decision denying Lockwood's application. (A.R. 16-28.)

On December 19, 2016, Lockwood requested review of the ALJ's decision. (A.R. 194–96.)

On August 17, 2017, the Appeals Council denied this request, adopting the ALJ's decision as the final decision of the Commissioner. (A.R. 2-8.)

### A. Lockwood's Testimony

#### 1. Health

Lockwood testified that she experiences swelling in her knees, legs, and feet, and that she lays in bed with pillows under her feet to alleviate the pain. (A.R. 73-74.) Lockwood stated that she elevates her feet in this manner "sometimes . . . two, three times a day" and sometimes she might spend the whole day in bed (although she limited the latter occurrence to three times per month at most). (A.R. 74.) Lockwood also testified that she has suffered from diarrhea and vomiting for the last two years and from vertigo for the last three years. (*Id.*) Lockwood stated that she takes motion sickness pills to treat the vertigo. (A.R. 74-75.) Lockwood testified that she suffers from back pain—the most severe pain

isolated to her tailbone and hips—on a daily basis and takes medication to treat that pain. (A.R. 76.) On a scale of one to ten, Lockwood testified that her back pain hovers at two or three, and about four to five times per week, reaches ten. (A.R. 77.) When asked whether she had been to the emergency room for this recurring level-ten pain over the last six months, Lockwood stated that she had not because, in her opinion, doctors would merely prescribe medication that she was already taking. (A.R. 78.)

Lockwood further stated that she can usually sit still for no more than five to ten minutes at a time and can stand for no more than five minutes at a time. (A.R. 82.) Lockwood explained that if she squirms while in a seated position (as she did during the hearing), she can remain seated for a longer period of time. (*Id.*) Lockwood stated that due to "weakness in [her] arms," she can only carry about five to ten pounds at a time. (A.R. 82-83.) Lockwood additionally noted that her hands begin to cramp if she uses them continuously for one hour, and that she takes a half-hour break when such cramping occurs. (A.R. 83.)

### 2. Daily Activities

Lockwood lives in a one-story house with her son, disabled daughter-in-law, and six grandchildren (including two toddlers). (A.R. 59, 63, 67.) She does not pay rent. (A.R. 62.) Lockwood smokes one pack of cigarettes per day. (A.R. 70.) Lockwood testified that she spends her days doing puzzles on the computer and playing with her two grandsons (she sits in a chair while they play in front of her). (A.R. 68–69.) Lockwood is also the sole caretaker of two small dogs. (A.R. 71.) While she does not take the dogs on walks, she does go out in the backyard with them. (*Id.*) Lockwood has a valid driver's license, owns her own vehicle, and pays for the insurance. (A.R. 65.) Lockwood drives to the store, appointments, and visits with friends, mostly at their homes but sometimes, on special occasions (*e.g.,* baby showers or birthday parties), at a park. (A.R. 68–69.)

Approximately twice a week, Lockwood babysits her grandchildren for two to three hours at a time. (A.R. 59.) She testified she has never babysat for more than two to three hours but would be capable of caring for the children for a longer period of time (*e.g.,* if

the parents were to go on a trip). (A.R. 59-60.) Lockwood testified that she does not receive payment from her son and daughter-in-law for babysitting their children and has not discussed "babysitting being a contribution" to household expenses. (A.R. 62.) Lockwood additionally testified that she "sometimes" washes dishes, "always" prepares her own lunch, and shops for household products (for her personal use) approximately twice a week. For the most part, Lockwood also does her own laundry. (A.R. 67.) Her granddaughters carry clothes to the laundry room, then Lockwood places the clothes into the machine and folds them herself. (*Id.*)

**B.     VE's Testimony**

The VE testified that Lockwood's "past relevant work" as an "automobile station service manager" was "medium and skilled with a specific vocational preparation of 7 (D.O.T. #185.167-014). (A.R. 84.) The VE stated that a hypothetical individual with an RFC to perform medium work with certain restrictions such as (1) frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, (2) occasionally climbing ladders, and (3) never climbing ropes or scaffolds could work as an automobile service station manager. (A.R. 84-85.) The VE stated that the same hypothetical individual, with added restrictions such as "occasional balancing, kneeling, and crawling," could work as an automobile service station manager. (A.R. 85.)

In response to hypotheticals posed by Lockwood's attorney, which encompassed the additional restrictions set forth in the opinion of Dr. William Womack, Lockwood's primary treatment provider, the VE stated there would be no work for such a restricted individual. (A.R. 86-87.) For example, there would be no work for a hypothetical individual who could work three days a week for up to two hours per day. (A.R. 86.)

**C.     The ALJ's Decision**

At step one, the ALJ determined that Lockwood met the insured status requirements of the Social Security Act through March 31, 2020 and had not engaged in substantial gainful activity since June 19, 2014 (the alleged onset date of her disability). (A.R. 21.) At step two, the ALJ found that Lockwood had the following severe impairments: lumbar

degenerative disc disease, knee degenerative joint disease, osteoarthritis, and obesity. (*Id.*) The ALJ acknowledged the record also contained evidence of chronic obstructive pulmonary disease with tobacco dependence, GERD, acute upper respiratory infection, diverticulosis, internal hemorrhoids, benign paroxysmal vertigo, fatty liver, atherosclerosis, atrial enlargement, renal cyst, and trochanteric bursitis, but found these were not severe impairments. (A.R 22.) At step three, the ALJ determined that Lockwood didn't have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (A.R. 22-23.)

At step four, the ALJ determined that Lockwood had the RFC to perform medium work, except that she is limited to frequently climbing ramps and stairs, balancing, stopping, kneeling, crouching, and crawling, to occasionally climbing ladders, and to never climbing ropes or scaffolds. (A.R. 23-27.) The ALJ also found that Lockwood could perform her past relevant work as an auto service station manager. (A.R. 27.) The ALJ stated that Lockwood's past relevant work, as actually performed, involved spending "slightly less than half her day walking, stooping, kneeling, and crouching," or, in other words, performing that work "at medium exertion . . . consistent with the D.O.T.'s description." (*Id.*) Therefore, the ALJ concluded Lockwood was not entitled to SSDI benefits. (A.R. 28.)

### III. DISCUSSION

Lockwood raises only one issue in her opening brief—she contends the ALJ erred by failing to articulate clear and convincing reasons for rejecting the medical opinion of Dr. Womack, her treating physician. (Doc. 14 at 3.) The Commissioner responds that the ALJ properly rejected Dr. Womack's opinion because (1) he was not familiar with the Social Security Act's definition of disability, (2) his opinions concerning Lockwood's restrictions were contradicted by the medical evidence in the file, and (3) his opinions were also contradicted by Lockwood's admitted abilities. (Doc. 16 at 8-13.) Lockwood did not file a reply brief.

…

**A.    Legal Standard**

The Ninth Circuit recognizes three tiers of medical opinions—those of (1) treating physicians, (2) examining physicians, and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The higher the tier, the greater weight that opinion typically receives. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This hierarchy rests on the idea that physicians with regular, close patient contact are best-equipped to assess a claimant's medical needs and limitations. *See* 20 C.F.R. § 404.1527(c)(2). The medical opinions of treating physicians typically receive "substantial weight." *Bray v. Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted).

An ALJ may reject a treating doctor's uncontradicted opinion only after giving "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In contrast, if the treating doctor's opinion is contradicted, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, the parties dispute which standard should apply. Lockwood argues that Dr. Womack's opinion was uncontradicted and that the "clear and convincing reasons" standard is therefore applicable. (Doc. 14 at 6-7.) The Commissioner, meanwhile, argues that Dr. Womack's opinion was contradicted by another medical opinion—that of Ms. Hosack—so the lesser "specific and legitimate reasons" standard should be deemed applicable. (Doc. 16 at 8.)

The Court agrees with Lockwood and will apply the "clear and convincing reasons" standard. Because Ms. Hosack is a certified physician's assistant, she was not an acceptable medical source at the time Lockwood filed her claim. *Rocha v. Comm'r of Soc. Sec.*, 2018 WL 2460194, *10 (E.D. Wash. 2018) ("Prior to March 2017, physician's assistants were not classified as an "acceptable medical source.'") (citation omitted). Accordingly, the Court will treat Dr. Womack's opinion as uncontradicted.

**B.    Analysis**

On June 29, 2015, at Lockwood's request, Dr. Womack completed an "Attending

Physician Statement" for submission to Aetna, Lockwood's long-term disability insurance provider. (A.R. 55, 352–53.) Dr. Womack checked a box stating that Lockwood had "[n]o ability to work." (A.R. 353.) However, Dr. Womack also noted that Lockwood was capable of working two hours per day, two to three times a week. (*Id.*) That same day, Dr. Womack completed a "Capabilities and Limitations Worksheet," which was also intended for submission to Aetna. (A.R. 55, 355.) Three months later, Dr. Womack signed Lockwood's Arizona Department of Transportation "Impaired Plate/Placard" application form. (A.R. 369.)

Because "disability" is an issue reserved to the Commissioner, the ALJ afforded little weight to Dr. Womack's assessment of Lockwood as "permanently physically disabled." (A.R. 26.) The ALJ identified three reasons for rejecting Dr. Womack's opinion: (1) lack of evidence suggesting that Dr. Womack was even familiar with the SSA's definition of "disability"; (2) Dr. Womack's assessment conflicted with evidence in Lockwood's medical records; and (3) Dr. Womack's assessment conflicted with Lockwood's admitted abilities.[1] (A.R. 26-27.)

The Court concludes these constituted clear and convincing reasons, supported by substantial evidence, for rejecting Dr. Womack's opinion. First, the ALJ correctly noted that Dr. Womack's checking of a box that identified Lockwood as "permanently physically disabled" did not constitute a "medical opinion," because disability is an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Although impairment is a purely medical issue, disability is more complex because it involves "physical, psychological, and psychosocial factors that can change over time." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted). Because "[t]he law reserves the disability determination to the Commissioner," an ALJ's rejection of a treating

---

[1] The ALJ identified a fourth reason, that "the course of treatment pursued by Dr. Womack [was] not consistent with what one would expect if the claimant were truly disabled." The Court will not address the adequacy of this reason because the ALJ's first three reasons are sufficient to uphold the ultimate non-disability determination. *Cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("Any error the ALJ may have committed [with respect to evaluation of one issue] was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.").

physician's findings on disability does not, on its own, trigger a duty to seek out further information from the treating physician. *Id.* (citations omitted). In her brief, Lockwood emphasizes that even though "the ALJ is not bound by an expert medical opinion on the ultimate question of disability," the ALJ is still required to "provide 'specific and legitimate' reasons for rejecting the opinion of a treating physician" on the issue of disability. (Doc. 14 at 8 n.2.) But here, the ALJ did just that.

For example, the ALJ found that Dr. Womack's statement that Lockwood had "[n]o ability to work" was contradicted by the evidence in Lockwood's medical file, including findings from x-rays, MRIs, and physical examinations. (A.R. 26.) Lockwood seeks to dispute this conclusion by pointing to a June 17, 2014 examination by Ms. Hosack that revealed a decreased range of motion, tenderness to palpation, weakness of the psoas and quadriceps bilaterally, and decreased reflexes and sensation over the entire thigh, calf, and feet. Yet in that same examination, Ms. Hosack wrote that Lockwood "walk[ed] with a stable gait," had "good coordination," and had "[n]o loss of balance." (A.R. 413.) Furthermore, although Ms. Hosack did note "weakness of [Lockwood's] psoas and quadriceps bilaterally," the full statement provides a more positive outlook on Lockwood's lower extremity muscle groups: "She has full strength in all lower extremity muscle groups with the exception of the weakness in her psoas and quadriceps bilaterally." (A.R. 414.)

Lockwood also points to an MRI taken June 10, 2014, which showed "broad-based L1-L2 central disc bulge with mild thecal sac effacement and mild multi-level degenerative disease." But again, Lockwood has cherry-picked from the MRI findings—the examining doctor's final impression was "moderate-size broad-based L1-L2 annular bulge with mild thecal sac effacement, but without significant canal or foraminal stenosis." (A.R. 303.) Finally, Lockwood points to an x-ray of her right knee that showed "mild patelloformal osteoarthritis and a small effusion." But the examining doctor also found "normal alignment," and apart from "a small amount of joint fluid," "otherwise normal" soft tissues. (A.R. 300.) It is also worth noting that although Lockwood points to three discrete examples that might contradict the ALJ's conclusion, the ALJ did not rely solely on those

three examples in deciding to afford little weight to Dr. Womack's opinion. (A.R. 24.) Indeed, when determining the impact of Lockwood's physical limitations on her RFC to perform medium work, the ALJ considered the entirety of "objective findings, diagnostic studies, treatment modalities, and [the] treatment record." (*Id.*) The ALJ concluded that although the objective reports were "consistent with some abnormalities of [Lockwood's] lumbar spine, knee, and hands, there [was] no evidence of any nerve root impingement, severe stenosis, progressive neurological deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged." (*Id.*)

The ALJ also reviewed clinical evidence that rebutted Dr. Womack's opinion. For example, the ALJ noted that all of Lockwood's "treatment was rendered by a primary care provider, as opposed to a pain specialist, orthopedist, or rheumatologist," and that Lockwood found ibuprofen to be an effective treatment. (A.R. 24, 289.) The ALJ further highlighted Lockwood's participation in physical therapy and use of a TENS unit to help manage her back pain. (A.R. 24; *see also* A.R. 345 [physical therapy progress note stating that Lockwood's "[b]ack did really well after TENS and exercise"].) The ALJ continued to analyze clinical evidence in Lockwood's medical file in this thorough, methodical manner, focusing not only on evidence that tended to undermine Lockwood's disability claim, but also on evidence that tended to support her claim. (*See, e.g.*, A.R. 24 ["In addition, there was no erythema, swelling, crepitus, or tenderness of the knees. There was however tenderness of the lateral joint line and popliteal fossa of the knee."].)

After considering the objective and clinical evidence, the ALJ concluded that Lockwood could "perform medium work and engage in postural activities frequently, with the exception of climbing ladders, ropes, and scaffolds." (A.R. 25.) The ALJ then considered the impact of Lockwood's obesity on her ability to function in a work environment, as well as treatment physicians' observations of Lockwood as "well, alert, oriented, and in no acute distress." (*Id.*) Next, the ALJ addressed "multiple inconsistencies" involving Lockwood's testimony; namely, that several ailments described by Lockwood in her testimony were never mentioned, and sometimes were specifically

denied, to her treatment providers. (A.R. 25.) For example, Lockwood testified that she needed to elevate her feet two to three times per day for two to three hours at a time but failed to relate such complaints to her treatment providers. (*Id.*).

The Court concludes that in arriving at its decision, the ALJ was not—as Lockwood argues—attempting "to play doctor." It is not the role of the ALJ to interpret medical evidence; that is, of course, the role of trained medical professionals. Yet, careful examination of a claimant's medical record to ascertain the claimant's disability status and ability to work is precisely the ALJ's role. *Bray*, 554 F.3d at 1222. An ALJ may reject medical source opinions where they lack support from clinical notes and findings. *Bayliss*, 427 F.3d at 1216. And Dr. Womack's opinion was hardly detailed. (*See, e.g.*, A.R. 353 [checked box stating that Lockwood has "[n]o ability to work. Severe limitation of functional capacity; incapable of minimal activity"].) Even where Dr. Womack was offered the opportunity to provide more detail, for instance, in the "Other/Comments" section of the "Attending Physician Statement," he only wrote "Based on history + available old records." (A.R. 353.) The ALJ permissibly accorded the statements in these forms little weight, in part because Dr. Womack's assessments were extremely brief and conclusory in form, with little in the way of clinical findings. *Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are *conclusory, brief*, and unsupported by the record as a whole, or by objective medical findings.") (citations omitted and emphases added).

Finally, the ALJ's determination that the restrictions identified by Dr. Womack were "sharply" contradicted by Lockwood's "admitted abilities" (A.R. 26) also provided a clear and convincing reason, supported by substantial evidence, for rejecting Dr. Womack's opinion. The ALJ noted that, during her hearing testimony, Lockwood acknowledged her capacity to care for her dogs, babysit her toddler grandchildren, attend to her personal grooming/hygiene needs, prepare her own lunches, drive her own car, visit with friends, complete puzzles and word searches, go to the store twice per week, and perform household chores. (A.R. 25.) And as the Ninth Circuit has explained, if "a claimant is able to perform

household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).[2]

**IV. CONCLUSION**

For the reasons stated above, **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 29th day of March, 2019.

_____
Dominic W. Lanza
United States District Judge

---

[2] Lockwood argues that, "[a]lthough there are slight differences between Lockwood's testimony and Dr. Womack's assessment, there is certainly nothing in Lockwood's testimony which reflects a greater ability than found by [] Dr. Womack and the ALJ's implication to the contrary is otherwise." (Doc. 14 at 9.) This argument lacks merit. Dr. Womack opined that Lockwood was permanently disabled and incapable of bending, squatting, stooping, or kneeling. (A.R. 346-47.) Those opinions are difficult to reconcile with Lockwood's testimony that, for example, she would repeatedly babysit a pair of toddlers, including changing their diapers, for a multi-hour period without any assistance from others. (A.R. 60.)